Case number 20-5458. The United States of America v. Joe Russell Jr. All arguments not to exceed 15 minutes per side. Ms. Jennifer Niles Coffin for the appellant. Good afternoon. I am Jennifer Coffin. I'm here on behalf of Joe Russell. I'd like to reserve three minutes of my time. Thank you. In 2010, Mr. Russell was sentenced to nearly 16 years after he pled guilty to distributing less than one half gram of crack cocaine. In the time since, Mr. Russell has transformed himself into a man of remarkable accomplishments. The government agrees that if he's eligible for a sentence reduction under the First Step Act, that this court should remand the case for further consideration. That is a big if. Given the briefing being fully complete in this case, I'd like to focus today, if I may, on the question whether 21 U.S.C. 841a in a crack case and punishable under subparagraph B1c is a covered offense for First Step Act In particular, whether the penalties for B1c were modified by Section 2 of the Fair Sentencing Act. It's Mr. Russell's position that B1c was indeed modified by Section 2 of the Fair Sentencing Act. In Snow, this court told us that when we're determining whether penalties for an offense were modified by the Fair Sentencing Act, we look to the ordinary meaning of the term modify. And the court quoted from several dictionary sources, and I'm just going to start with the first ones, that to modify means to make partial or minor changes to, to alter in respect to some of its qualities, to cause to vary without radical transformation, that's from the Oxford English Dictionary, to make somewhat different, that's from Black's Law Section 2 was no doubt altered in qualities, excuse me, Section 2 altered qualities of subparagraph B1c in several respects. It altered qualities with respect to its text, its scope, and its effect. Starting with the text, B1c was altered in the sense that it contains an explicit cross-reference to subparagraphs A and B, and through that explicit cross-reference, subparagraph C is already modified by A and B, so that when Section 2 of the Fair... Okay, I wanted to let you finish your sentence and I had a question. Okay, so when Section 2 of the Fair Sentencing Act modified subparagraphs A and B with respect to the quantities, the crack quantities, it necessarily also modified the scope, the text, the meaning of the text in subparagraph C. Okay, so if we assume hypothetically that the First Step Act did apply as you, or did cover this as you have suggested, how would the determination of his offender status affect that analysis and outcome, if any? So, Judge Donald, I think you're asking me a question about Mr. Russell in particular with respect to... I am, I am. Well, the answer... Because the court said he was a career offender, so I just... I mean, I know there was a broad policy question, but now I'm sort of going into the individual. Well, the answer to that question is really two-part. The first part is that to determine whether an offense is a covered offense, we actually are just looking at the offense as a category. So, if B1C as a category, if the penalties for B1C were modified by the Fair Sentencing Act, then whether he's a career offender or not is actually not relevant to that question. And in Beemuth, this court actually said that it's really just happenstance about what happens to someone with respect to their career offender status. The question is about what the statute of conviction was and whether that statute of conviction, the penalties for it, were modified by the Fair Sentencing Act. So, in at least the statutory sense, it's irrelevant. In reality, in practical purposes, from Mr. Russell's perspective, it makes a big difference because the way that the Fair Sentencing Act modified B1C and also the way that he was sentenced, that there's a relationship. This is sort of one of the third ways that B1C was modified in its effect in the sense that the anchoring weight of the statutory benchmarks of the statutory maximum and minimum, those were modified in their relationship to the drug quantity involved in the offense. So, for example, in Mr. Russell's case, he pled guilty to distributing less than half a gram, I think 0.4 grams of crack cocaine. That amount of crack cocaine in relation to the statutory benchmarks looks different now, both in relation to the statute and as the guidelines play out so that his guideline drug offense level in relation to the career offender range is now very different. And that difference in any case, in any career offender case, is relevant to how a person is ultimately sentenced. Judges frequently, commonly take into account the span between the ordinary drug range and the career offender range. Russell, if you could help me, I guess I get the idea. We don't look at the person, we look at the statute. Yes. But if the statute didn't change the statutory range of punishment for any person, wouldn't you say that it's kind of hard to say that the range provided by the statute has been modified? So, I have two answers to that. One is that the First Step Act doesn't actually say that the statutory range must be modified. What does it say? The penalties for the federal statute were modified. And that's a categorical question. But they weren't. They were just added. It was just other provisions were modified so that they had the same range as what C continues to have. Isn't that right? I mean, just technically, I know you can say, well, that's a modification. But in common parlance, that's not a modification. Well, a modification, I think that this court in Snow said one of the definitions, ordinary definitions, is to alter in respect to some of its qualities. One of the ways that it was modified is that it has an explicit textual cross-reference to A and B. And the Supreme Court in Nielsen v. Priop said that a statute like that exists in a of modification by the other provisions that are accepted out of the scope of the regular, the ordinary, the general statute, which you could say B1C. And that exception has become smaller. That exception has become smaller. And in becoming smaller, it modifies the scope of B1C. That's the second way. It doesn't modify the scope for anyone who was punished under B1C before the scope was changed. Well, if any of those persons globally were now sentenced under the new scheme, they would get the same range. There's just more people that are in that category. Is that right or wrong? Actually, that is incorrect. And I want to answer that in two ways. The first way is that the scope of B1C was changed because before the Fair Sentencing Act, it covered offenses involving less than five grams of crack cocaine or an unspecified amount. And now it covers offenses involving less than 28 grams of crack cocaine or an unspecified amount. So that's a modification, categorically, of its scope. Oh, wait a minute before you say that. My question goes to exactly what you just said. Let's say you have all the people who were under C before the change had less than five, right? By definition, what you just said. No, because you can also be convicted under B1C with no quantity specified. So they could have. And that's actually a great question. And it's very important. I would like to answer it in this way because I don't think it's been answered yet in any of the decisions, especially not in the Third Circuit's decision in Burt. In this circuit and in several circuits after Harris was decided in 2002, a person could be convicted under B1C and not have any quantity specified in the indictment or have a quantity less than five grams specified in the indictment to which they plead guilty. But they could actually be subject to a mandatory minimum under B1B or B1A based on factual findings by the judge, by the proponents of the evidence. This was a very common occurrence. But this court said that was fine as long as the sentence didn't go above the statutory maximum. We called this the mix and match approach. But in reality, there are lots of people who were convicted under B1C but sentenced under the mandatory minimums of B1B and B1A. Those people's statutory mandatory minimums after the Fair Sentencing Act of 2010 have been altered. So you're talking about people who were, I don't understand, they were under C or they were under B? They were convicted under C. There's a whole body of case law in several circuits before Apprendi that allowed this kind of conviction under C1C where people were actually sentenced to a mandatory minimum based on the factual findings by the judge. But what that means is there's... They still got the range for C though, right? They weren't sentenced, no, because their range was actually raised at the bottom by these fact findings by the judge. So you could have someone who actually got a mandatory minimum of 10 years and a maximum of 20 years because of that fact finding. And in those people... I'm not talking about what they actually got because of the fact finding. I'm talking about what the range was that they were convicted for, for the crime that they were convicted for. The range was the same if it was C. This court held that they were subject to the mandatory minimums under B1A and B1B after Harris because it was not considered to be an element at the time. That is just something that actually happened. But just even going back to the category... Ms. Kaufman, if I could just interrupt for a second. I have a practical question for you. As you know, I'm sure the Supreme Court had granted cert in the Terry case. Yes. Does that case present the same issue that you're presenting to our court? It does. Do you have any objection to our waiting until the Supreme Court has ruled before we rule in this case? Well, obviously, Mr. Russell would prefer for this court to rule in his favor and sooner rather than later. If we rule in his favor, would he get relief sooner? Do you think the circumstances are such he could get relief sooner than when the Supreme Court would rule in Terry? The circumstances are such that it is possible that he would be given the opportunity to obtain relief sooner than waiting for when the Supreme Court decides Terry, yes. I would be curious to know what the likelihood of that is. Certainly, it's technically true. Things can go very fast, but is it likely that if he gets a reduction, it'll be a reduction below what he's already served, I guess is my question. Well, that would be certainly his argument. He served 10 years, which is already quite a bit more than what his ordinary drug range would be today. And there are numerous people across the country who've been, like Mr. Woodson, for example, who were released to time served when the Fourth Circuit ruled quickly to remand the case and didn't actually issue his opinion for some time later. So they actually ordered- He was convicted under the career offender? Yeah, yes. What was the range? What was his range before? I can't remember. It was either 0 to 20 or 0 to 30. And now it's not been changed? It's just that the guidelines have been changed? Is that it? I don't even know that his career offender range changed, but I know that his underlying drug offense level would have changed. And he was released- So his career offender would still be the same range? I believe so, yes. So I'm just wondering whether that doesn't suggest that even if he got a review, he wouldn't get that much of a reduction. Is that true or not? I'm just asking. I have no idea. Well, I will just tell you that hundreds of career offenders across the country whose ranges did not change after the Fair Sentencing Act have received relief and were granted release under the First Step Act. And when they got that release, are they typically getting a guideline sentence regardless of the career? Is the career offender sort of out the door? Off the table, I should say. I would say that it depends on the circumstances of the case. Most of the people have probably already served what their ordinary drug range would be. And in keeping with the practice, in most career offender cases, and especially drug career offender cases, judges are not following the career offender guideline anyway. And so they're probably getting time served in most of these cases because they've already served so much time, at least 10 years. I see. Mr. Samuelson can comment on that as well. Thank you. Okay. Thank you, Ms. Coffin. You will have your rebuttal, Mr. Samuelson. Thank you, Your Honor. May it please the Court. My name is Brian Samuelson, and I represent the United States. Before I get into the two reasons that the defendant was statutorily ineligible for relief, I'd like to comment on the exchange that just happened. Mr. Russell's guidelines range was 188 months to 235 months. He was sentenced at the bottom of that range, which was 188 months. He would still be a career offender today, and he would still face exactly the same guidelines range today. Now, he is ineligible for relief under the First Step Act for two reasons. First, he was already sentenced in accordance with the Fair Sentencing Act. And second, he was not convicted of a covered offense. And I'd like to take those two in order, if I may. First, he was already sentenced in accordance with the Fair Sentencing Act. In accordance doesn't necessarily mean with knowledge of. It means consistent with or in harmony with. And we know from the initial appeal of his sentence that his sentence was consistent with the Fair Sentencing Act. By the time of the appeal, it was clear that the Fair Sentencing Act applied to Russell's sentence. He raised a Fair Sentencing Act claim on appeal, and this court rejected that argument and affirmed his sentence. I think the conclusion is that his sentence was consistent with the Fair Sentencing Act. And the First Step Act is clear that the court cannot entertain a sentence reduction motion in those circumstances, and this court should affirm on that basis. You didn't raise that below? No, Your Honor, we did not. We are urging the court to affirm on a new ground supported by the record. Russell is also ineligible for relief because he was not convicted of a covered offense. Section 841B1C remains unchanged in both text and effect after the Fair Sentencing Act.  I think what Smith and Woodson and those cases get wrong is that B1C is not a quantity-driven offense. It applies to any unspecified amount of cocaine, and that is true both before the Fair Sentencing Act and after the Fair Sentencing Act. So the Fair Sentencing Act did not modify B1C's upper boundary because B1C does not have an upper boundary. Any unspecified amount of cocaine may be charged as a B1C offense, and that means that in practical terms, the effect of B1C is also unchanged. The question the statute tells us is whether the statutory penalties have been modified by the Fair Sentencing Act, and I don't think we can say that the statutory penalties have been modified unless we can identify some hypothetical defendant somewhere who would a different penalty today than he did before the Fair Sentencing Act. So what do we do with the judge's comments where the judge said he would give Russell some leniency if the Fair Sentencing Act applied? You're saying that, well, he's already been sentenced in accordance with that, and so it really doesn't make any difference. So what do we make of that comment? Should we make anything of it? Your Honor, I think the best way to read that comment is that the parties were talking about his base offense level. And it is true that under the Fair Sentencing Act, his base offense level would be lower than it was before. But that doesn't change anything here because he was designated a career offender, and his career offender guideline is exactly the same as it was before the Fair Sentencing Act. And that's exactly the line of reasoning this court followed on the initial appeal from to conclude that the Fair Sentencing Act had not changed anything, and that therefore his original sentence was consistent with the Fair Sentencing Act. So Russell's sentence was driven by the career offender status rather than any quantity of drugs? That's correct, Your Honor. What's he seeking then here? He wants a variance? Is that the idea? Yes, Your Honor. He would like a reduced sentence below his guidelines range, and a reduced sentence would be below his initial guidelines range, and it would still be below his current guidelines range. Do you agree with Ms. Coppin that the Terry case that the Supreme Court will consider is the issue that you all are raising or that is being raised by this case? Yes, it is one of the issues. The Terry case does address whether B1C is a covered offense. The government, I think you can affirm on the independent basis that he was ineligible for in accordance with the Fair Sentencing Act. So I think there are clear grounds for affirmance here that doesn't touch on the issue in the Terry case. What if we disagree with you on that point? Perhaps we say that you have waived it by not arguing it below. What would the government's position then be? Should we wait on Terry, or should we go ahead and rule? Certainly, I think it would be reasonable to wait on Terry. I do think that case will decide the issue. The court could also rule in the interim. To the discussion of whether it's likely that this defendant could obtain relief in the interim, I'm not certain. It's certainly possible. I think the court would have discretion to handle that either way. Ms. Coppin raised for us the Fourth Circuit case, but the Fourth Circuit simply remanded without actually issuing a formal opinion. If this court considered something like that, I mean, to wait on the court, if this court considered something like that, what would the government's argument against that be? What are the pros and cons of proceeding in that manner? Just to be clear, the proposal is to remand for pending Terry? Yes, that's the argument I believe that she raised. Telling us about the case in the Fourth Circuit where that was the route taken. Your Honor, we would urge the court not to do that simply because there is a compelling additional reason to affirm in this case that is independent of Terry, and that is simply that he was already sentenced in accordance with the Fair Sentencing Act. He's received all the benefit of the Fair Sentencing Act that he is entitled to. The Fair Sentencing Act applied as a matter of law before he was sentenced, and then this court held through its review on initial repeal that that sentence was consistent with the Fair Sentencing Act. So, I think he's... So, the judge didn't think he was acting under the Fair Sentencing Act. That's true, that the district court did not think he was acting under the Fair Sentencing Act. I believe the term in accordance with, as best read, is not requiring knowledge of necessarily of, but requiring harmony with. The dictionary definition of the term in accordance with is... Even though, as Judge Donald suggested, if he thought he was acting under the Fair Sentencing Act, he might have given a different... He might well have given a different sentence. That's the difficulty with that argument. Well, Your Honor, I don't think that's quite true because the district court correctly identified the guidelines range that applied both before and after the Fair Sentencing Act. This is a case where, as to this individual, the Fair Sentencing Act had no effect on the guidelines range. It had no effect... But are the judge's own words the best indication of his thought process at that time? Whether he acted in accordance with or not, if his belief was that he didn't have the authority to do that, isn't that something that ought to be given some weight and some consideration? Well, Your Honor, I agree that the judge's words are the best indicator of what he did. And if you look at the sentencing transcripts, so this is pages 75 and 76 of the record, what the judge says is that if the Fair Sentencing Act applies, there would be some leniency. But immediately after that, all the parties agree that this is a case where the guidelines range is driven by the career offender range, and that the Fair Sentencing Act would not change that career offender range. So the district court was very clear that it applied the correct guidelines range when it sentenced him initially. And this court was clear on appeal that that guidelines range would not change, and that his sentence was therefore in accordance or consistent with, harmonious with the Fair Sentencing Act. To return to an earlier point about B1c being a covered offense, if this court does reach does reach that issue, notwithstanding Terry, the district court, I think it's clear here that the statutory penalty certainly for this defendant would not have changed pending after the Fair Sentencing Act. But that's true of every defendant convicted of a B1c offense. There is no defendant who would face a different sentence today than he did before the Fair Sentencing Act. And that is different than B1a offenses and B1b offenses, because the lower thresholds for those provisions have been modified, there are some defendants who would face different statutory penalties. But that's not true of B1c offenders, and I do not think we can fairly say that the statutory penalties for a B1c offense have been modified absent anybody receiving a different statutory penalty after the Act. Did you clarify something for me? I maybe misread this from the record, but I thought that he also had a count that was for B1b or B1a. Your Honor, he was charged with a B1b offense that was dismissed after he pled guilty to the B1c offense. I see. So that wasn't part of the sentence. No, Your Honor. Thank you. In short, the district court here was doubly barred from considering Russell's First Step Act motion, both because Russell had already received the benefit of the First Step Act, and because B1c is not a covered offense. And therefore... Pardon me, now that I'm thinking about your response to that, if he'd been charged with the... What was it, B1b? Yes, Your Honor. If he had been charged with that, and given the same sentence, he then now would have a chance to have it reduced. Yes, Your Honor. B1b is a covered offense, so he would have a chance to... He also would have faced a mandatory minimum penalty in that case, but yes. He got that amount anyway or not? He did. That's true, Your Honor. In this case, he did. So he sort of got screwed by being charged with a lesser crime. It turned out. Possibly, Your Honor. I don't think that would be fairly predictable from... Right. When the charging decision was back. So in short, I don't think he is eligible for a sentence reduction in this case, and I urge the court to affirm on that ground. Any further questions for Mr. Samuelson? Okay, there being none, Ms. Coffin, you'll have your rebuttal at this time. To your point, Judge Rogers, it is true that under the government's theory that a lot of people's eligibility would then depend on charging decisions by the prosecutor. I'd also like to go back to a question you asked that I don't feel like I answered adequately, which is when you said that the penalties haven't changed, so therefore he should not be eligible. There are a lot of people who pled guilty to offenses involving more than 280 grams of crack who the government agrees are eligible for reductions. And there's actually a case pending in this court that I cited in my reply, United States v. Wynne, in which the government conceded that he was eligible, and that was someone whose offense was a B-1B offense before the Fair Sensing Act, and because of the way it was charged and convicted was a B-1B offense afterward. But I'd like to turn quickly to the government's argument that he was previously sentenced in accordance with the act. I think that it's the only fair way to look at this is that the judge was bound by circuit precedent to sentence him in accordance to pre-act law, and that's exactly what he did, and that's what this court said he did in the Court of Appeals. It's the fact that the judge sentenced according to pre-act law is so clear that the judge didn't even think he should apply the Fair Sensing Act amendments under the guidelines, even though he was required to by law on that day. So what Mr. Russell missed out on was the awareness of what the actual full guideline calculation was. Yes, it ended up at the career offender range, but the it's part of that calculation, and it's often taken into account, and that's why counsel for Mr. Russell tried so hard to bring it up, to bring these amended calculations up. I'm trying to understand, Ms. Kopp, and what you're arguing. You're saying because now the amount of drugs at issue are lower in the sentencing range that applies, that that would mean that the judge now would be more likely to vary downward from the guidelines. Is that your argument? Absolutely, yes. That is a very common reason for varying downward from the career drug offense level and the career offender guideline. It's very common for judges to select a sentence either within the ordinary drug range or some kind of compromise place in between, especially when this is just a regular ordinary drug career offender case with nothing spectacular about it. That somehow changes the perspective of the district judge as to the status of being a fact that the amount of the drugs are low in the range. Absolutely, and that's why counsel for Mr. Russell tried to bring it up and was cut off because the judge believed wrongly that those guideline amendments were not retroactive, and Mr. Russell would ask this court to see that he was not in fact sentenced in accordance to the Fair Sentencing Act, that he's eligible for a reduction, and that the district court procedurally erred in denying his motion. Thank you. Just one other question, Ms. Coffin. So let's assume that you're correct. Hypothetically, if he had been sentenced in the just ordinary drug laws, what would his range without the career offender status, range likely be? Just give me that calculation. So today, under Section 2D1.1 of the guidelines, his offense level, his base offense level would be 16 based on 9.1 grams of crack. He would get three levels off for acceptance of responsibility for a total offense level of 13, and that is a So he has a very strong position for requesting a downward variance, especially in light of his rehabilitation. Okay. Are there further questions, Judge Rogers, Judge Bush? Thank you, Ms. Coffin, Mr. Samuelson. The matter is submitted, and we will issue an opinion in due course.